## Bridgeford & Co. v. Meagher.

(Decided September 21, 1911.)

## Appeal from Jefferson Circuit Court.
## (Common Pleas, Second Division.)

1. **Master and Servant—Liability of Master for Wrongful Discharge of Servant Before Term Expires—Construction of Contract.**—A contract engaging a servant "for a term of three years, or as long as he performs his duties in a successful or satisfactory manner" does not authorize the master to discharge the servant within the term because he is dissatisfied with his service or unless the servant fails to perform his duties in a good, efficient and workmanlike manner.

2. **Same—Sufficiency of Petition by the Servant to Recover Damages.**—A petition setting up the contract, and its breach by the master, and averring that the servant was able, ready and willing to perform his part of the contract, and that he had been unable to obtain employment after his discharge although he had endeavored to do so, stated a good cause of action.

3. **Action by Servant, When May Be Brought.**—An action by a servant to recover damages for a wrongful discharge may be brought at any time after the discharge; he need not delay until the end of the term; but he can only bring one action, and in this must recover all the damage to which he is entitled, including that accruing before the trial as well as that which will accrue between the trial and the expiration of the contract.

4. **Measure of Damage.**—The damage to which a servant is en-titled is the difference between the contract compensation and the amount he has earned or that he could earn by the exercise of reasonable diligence to find employment.

O'NEAL & O'NEAL, BROWN & NUCKOLS for appellant.

BULLITT, RYAN & HEMPHILL for appellee.

OPINION OF THE COURT BY JUDGE CARROLL—Affirming.

On December 21, 1908, the following contract was entered into between the appellant, Bridgeford & Com-pany, and the appellee Meagher:

"This is to certify that the undersigned, Bridgeford & Co., will guarantee Louis L. Meagher a steady position as foreman of our molding shop, the same position he now holds, for a term of three years or as long as he performs his duties in a successful or satisfactory manner, provided Bridgeford & Co. are in existence, at a salary of not less than Twenty-two and. 50-100 Dollars ($22.50) per week, payable weekly, said Louis L. Meagher to give his entire time and attention to the services of Bridgeford & Co. This contract to take effect January 1st, 1909."

At the time this contract was entered into, Bridgeford & Company were and had been for many years engaged in the manufacture of stoves and structural iron work, and the appellee, a molder by trade, had been working for them for some nine years, and for about three years preceding the contract, held the position of foreman of the molding shop. On January 1st, 1909, he commenced work under the contract and continued until the 22nd of November, 1909, when he was discharged. In January, 1910 he instituted this action against appellant to recover damages for its breach of the contract in discharging him. He averred in his petition that during the time he worked for it under the contract—

"He gave his entire time and attention to the services of defendant as required by said contract, and performed his duties in a successful and satisfactory manner, as said employe, and that defendant has been in existence ever since the making of said contract and still in existence. That plaintiff has at all times been, and still is, ready, willing and able to perform his part of said contract, and did so perform it until his wrongful discharge as aforesaid, and, since his said discharge has at all times been ready, willing and able to perform his part of said contract, and has tendered and offered to do so, but defendant, in violation of its contract, has refused and still refuses to permit him to do so. Plaintiff says that by reason of said breach of contract he was thrown out of employment and lost the opportunity to earn the salary promised in said contract for the remainder of the term to-wit: from November 22, 1909 to January 1st, 1912, and that he has been unable to obtain other employment although he has diligently endeavored to do so; that by reason of said breach of contract plaintiff has been damaged in the sum of $2,460.00."

In its answer, appellant after denying in a general way the averments of the petition, set up in one paragraph that it did not undertake in the writing sued on to give appellee a position for three years, and in another paragraph it averred that it discharged him because he failed to perform his work in a satisfactory or successful manner.

Upon a trial before a jury a verdict was returned in favor of appellee for $2,000.00, and from the judgment entered upon this verdict it prosecutes this appeal.

The first error assigned by counsel is the failure of the lower court to sustain a demurrer to the petition. In support of this assignment the argument is made that the contract was not for three years but for an indefinite term and therefore either party had the right to terminate it at any time without cause, and further, that the undertakings of the contract were not mutual, as there was no obligation upon the part of appellee to render service to appellant under the contract for any length of time. We do not think either of these objections are well taken. The contract was for a term of three years but could be terminated before the expiration of that period if appellee failed to perform his duties in a successful or satisfactory manner, or it went out of existence. But if he performed his duties in a successful or satisfactory manner, and it continued in business, it did not have the right to discharge him until the end of the term. Nor is the contract wanting in mutuality.

Appellee in undertaking to give his entire time and attention to the service of appellant, clearly obliged himself to render this service for the term of three years at the price stipulated in the contract. He was as much bound by the terms of the contract to render service for the time specified as appellant was to employ him for that time. The contract imposed upon each of the parties mutual and reciprocal obligations, and a breach of the terms by either gave to the other a cause of action.

The case of L. & N. R. R. Co. v. Offutt, 99 Ky., 427, relied on by counsel for appellant, is not in point. The court in that case expressly ruled that the contract sought to be enforced "was a contract indefinite as to the time or term of employment or service and was therefore subject to be terminated at any time at the discretion of either party to it." In that case the contract did not

fix any term of employment. In this case, it did. Yellow Poplar Lumber Co. v. Rule, 106 Ky., 455.

Another ground for reversal relied on is alleged error of the court in giving to the jury the following instructions:

"No. 1. It appears in this case that on the 21st day of December, 1908, there was a contract between the plaintiff, Louis L. Meagher, and the defendant, Bridgeford & Company under and by which the defendant employed the plaintiff to work for it as foreman of its molding shop for the period of three years beginning January 1st, 1909, with the privilege on the part of the defendant to terminate the contract before the three years, if the duties of the plaintiff under the contract were not performed in a successful or satisfactory manner. I instruct you, gentlemen, that under the contract and by its terms the plaintiff agreed to perform his work as foreman in a good, efficient and workmanlike manner. It further appears, gentlemen, that on the 22d. day of November, 1909, and before the termination of the three years referred to in the contract, the defendant, Bridgeford & Company discharged from its service the plaintiff, Louis L. Meagher. Now if you believe from the evidence in this case that the duties of Meagher under the contract, as foreman, of the defendant's molding shop were done in a good, efficient and workmanlike manner, then in discharging Meagher from its service the defendant Bridgeford & Company became liable under the contract for such damage as should result to Meagher, by reason of such discharge, and, in that event, the law of the case is for the plaintiff, and you should so find.

"But unless you believe from the evidence in this case that the duties of the foreman of the molding shop of Bridgeford & Company were performed by Meagher in a good, efficient and workmanlike manner, then Bridgeford & Company had the right to discharge Meagher at the time they did discharge him, and the law of the case is for the defendant, and in that event, you should so find.

"No. 2. If you find for the plaintiff, you will award to him such sum in damages as you believe from the evidence was the amount lost by him by reason of being discharged from the service of the defendant and that means, gentlemen, you will find for him, the plaintiff,

in the event you find for him at all, the full amount of his contract wages from the time he was discharged until the period of employment terminated, by its date, to-wit: January 1st, 1912, which would amount to $2,-460.00, from which you will deduct such sum as you believe from the evidence the plaintiff has earned, and such sum, if any, as you may believe from the evidence the plaintiff could by the exercise of diligent efforts to secure employment, have earned, and such sum as you believe from the evidence the plaintiff will earn or by the exercise of reasonable diligence to obtain employment, can earn up to the termination of the period of time covered by the contract, to-wit: January 1st, 1912. Your verdict for the plaintiff, if you find for the plaintiff, not to exceed the sum of $2,260.00. If you find for the defendant, you will say so by your verdict, and no more.''

The objection urged to instruction No. 1 relates to the construction placed by the court upon the words ''in a successful or satisfactory manner.'' It will be observed that the trial court instructed the jury that these words meant that appellee was ''to perform his work as foreman in a good, efficient and workmanlike manner,'' and if he did so, it had no right to dismiss him; while it is the contention of counsel for appellant that under the contract it was the sole judge as to whether appellee performed his work in a successful or satisfactory manner, and it had the right to determine in good faith this question for itself, and to discharge appellee without reference to whether the service rendered by him was efficient and workmanlike or not. There is a line of cases holding that where the master reserves the right to discharge the servant if his services are not ''satisfactory,'' he may do so without any other cause or reason than the mere fact that he is not satisfied with him or his service. Other cases hold that under such a contract the master in discharging the servant before the term ends must in good faith be dissatisfied and that if he is in good faith dissatisfied with the services of the employe he may discharge him before the contract term has expired although in fact no valid ground for the discharge exists. In the note to Corgan v. George L. Lee Coal Company, 218 Pa. St., 386, reported in 11 American and English Annotated Cases, 841, the authorities upon this

question are collected and a number of cases cited holding in the language of the editor of the note that:

"Under a contract of employment for a definite term, provided the duties of the employment are satisfactorily performed, the services must be performed by the employe to the satisfaction of the employer, and that the employer has the absolute right whenever he becomes in good faith dissatisfied with the services of the employe to discharge him."

But in nearly all of the cases, where the right of the employer to discharge the employe if his services are not satisfactory is recognized the contracts of employment expressly and unconditionally conferred upon the employer this power, and there was no language in the contract limiting this arbitrary authority or manifesting a purpose to protect the employe during the term if he was capable and trustworthy and performed his duties in an efficient and workmanlike manner. And if this contract read that appellant reserved the right to discharge appellee whenever his services were not satisfactory to it, or when he did not give satisfaction, there could be found ample authority to support the proposition that appellant might have discharged appellee before the expiration of the term if it was not in good faith satisfied with the manner in which he performed his duties, although he may have discharged them in an efficient or workmanlike manner. Wood on Master and Servant, 2d Ed., Sec. 109; Koehler v. Buhl, 94 Mich, 496. But this rule, although well established and supported by the great weight of authority, ought not to be extended to embrace contracts that do not fall strictly within its scope. And as this contract may by its terms be taken out of the class to which other contracts giving to the employer the right to discharge without cause belongs, we are not disposed to hold it applicable. When it was entered into appellee was holding the same position guaranteed to him by the contract. He had informed appellant that as it was about to convert its establishment into a non-union plant, he could not remain in its employment unless some satisfactory arrangement was made by which he would be insured permanent employment. Following this declaration of appellee and as an inducement for him to remain in its employment, it prepared the contract in question. It will be observed that this contract stipulates that it is to con-

tinue in force "for the term of three years or as long as he performs his duties in a successful or satisfactory manner, provided Bridgeford & Co. are in existence," showing that it was intended by appellant to retain appellee in its service for as long as three years if he performed his duties in a successful or satisfactory manner, and it remained in business. Unless this was the intention of the parties, there was no reason for inserting in the contract that it should terminate before the expiration of three years if Bridgeford & Company went out of existence. If it had the right to discharge appellee at any time his services were not satisfactory, it had the right to do so whether it went out of existence or not; and it is manifest that the words "provided Bridgeford & Co. are in existence" were inserted in the contract to protect it from loss in the event it went out of existence before the expiration of three years, and while appellee was performing his services in successful, or efficient, and workmanlike manner. The situation of the parties at the time it was entered into may also be looked to, in arriving at their intention as expressed in the contract, and when the conditions surrounding them are considered, it is manifest that it was not contemplated by either that one might arbitrarily and without good cause terminate the contract. Appellee wanted his position secured for a definite term, and appellant desired his services for a certain period, and with these mutual purposes in view the contract was entered into. To allow appellant to terminate at its pleasure a contract made under these circumstances would do violence to the intention of the parties when it was executed, and to the language employed to express their engagement. Having this view as to the proper construction of the contract, we think the trial court correctly instructed the jury.

The objection urged to instruction No. 3, is that it permitted the jury to award appellee damages which might accrue after the time of the trial which took place in November, 1910, more than thirteen months before January 1st, 1912, at which date the three years expired. It is the settled law in this State and has been so ruled by virtually all the courts that in actions like this there can be only one recovery, and that one must include all past as well as future damage that has been or may be sustained by reason of the breach of contract on the part

of the employer. The action to recover this damage may
be brought as soon as the contract is broken, or at any
time before the expiration of the term for which the
employment was made, or the employe may if he so elects
wait until the end of the term; but, whenever he brings
the suit, he must in that suit recover all of his damage
past and future growing out of the breach of the con-
tract. It is also the general rule that the measure of
damage is the difference between the contract price and
any sum earned by or that by the exercise of reasonable
diligence could have been earned by the employe after
his discharge. To illustrate, if under the contract the em--
ploye was to receive $100.00 a month, and immediately
after his discharge he obtained employment that paid
him $50.00 a month, the measure of his damage, assum-
ing that he had a right to recover, would be $50.00 a
month, and this would be all that he could recover, al-
though he was not actually employed at $50.00 a month,
provided it appeared that he could by the exercise of
reasonable diligence have procured employment that
would have paid him this sum. So that, if the trial
should take place after the expiration of the contract,
there would not be much difficulty in determining by the
application of this rule the amount of damage to which
the injured employe was entitled; but, if the trial is had
before the contract expires, it is apparent that the sum
he would earn or that he might earn by the exercise of
reasonable diligence between the date of the trial and the
expiration of the contract is necessarily involved in great
uncertainty, and this has induced some courts to reject
the right to recover any damages after the date of the
trial if it takes place before the expiration of the con-
tract. McMullan v. Dickinson, 60 Minnesota, 156, 51
Am. St. Rep. 511. But the great weight of authority
supports the rule prevailing in this State, that the action
may be brought before the expiration of the term;
and, if it is, damages may be recovered in this action for
loss that will be sustained for the whole of the term,
although the trial may be had before the term expires.
In Pierce v. Tenn. &c. Coal Co., 173 U. S., 1, 43 L. ed.,
591. The Supreme Court of the United States, in con-
sidering this question, said:

"The defendant committed an absolute breach of the
contract at a time when the plaintiff was entitled to re-
quire performance. The plaintiff was not bound to

wait to see if the defendant would change its decision and take him back into its service; or to resort to successive actions for damages from time to time; or to leave the whole of his damages to be recovered by his personal representative after his death. But, he had the right to elect to treat the contract as absolutely and finally broken by the defendant; to maintain this action once for all, as for a total breach of the entire contract; and to recover all that he would have received in the future as well as in the past if the contract had been kept. In so doing, he would simply recover the value of the contract to him at the time of the breach, including all the damages past or future resulting from the total breach of the contract. The difficulty and uncertainty of estimating damages that the plaintiff may suffer in the future is no greater in this action of contract than they would have been if he had sued the defendant in an action of tort to recover damages for personal injuries sustained in its service, instead of settling and releasing those damages by the contract now sued on." The same rule was announced in John C. Lewis Co. v. Scott, 95 Ky., 484. 44 Am. St. Rep. 251; Forked Deer Pants Co. v. Shipley, 25 Ky. L. R. 2299; Keedy v. Long, 71 Md., 385, 5 L. R. A., 759; Hamilton v. Love, 152 Ind., 641, 71 Am. St. Rep. 384; Smith v. Cashie, &c. Co., 142, N. C., 26, 5 L. R. A., n. s., 439; Howard v. Daly, 61 N. Y., 362, 19 Am. Rep., 285; Howay v. Going, &c. Co., 24 Wash., 88, 6 L. R. A., n. s., 49.

It is further argued that the averments of the petition are not sufficient to authorize any recovery after the time of the trial. In support of this, attention is called to Lewis Co. v. Scott, supra, in which the court said:

"If it was to be a part of her damages that she remained out of employment after seeking it, it was incumbent on her to allege the fact, and if because she brought her suit before the expiration of the contemplated term of service, she could not fix the damage or loss with certainty, this was a burden she voluntarily assumed by bringing the suit when she did. She must lay the basis as best she may upon which the jury may assess her damages. It would be an approximation, but is permissible. and is the most that could be required of her and the best she could do unless she waited until the year was out."

As the plaintiff under the rule prevailing in this State

in actions like this is required to aver and prove that he was unable to obtain other employment, if such be the case, it is manifest that it would be practically impossible for the plaintiff to truthfully aver or state that he could not obtain employment after the trial, as he could not with any degree of certainty declare in advance whether he could obtain employment or not or what compensation he would derive from employment if he succeeded in obtaining it, and therefore it is argued that no damages should be allowed after the trial.

Viewing the matter from a logical standpoint, there is much force in this contention; but as practically all the authorities agree that only one action can be brought and this may be brought and tried before the end of the term, it follows that if this practice is to be adhered to that the damages subsequent to the trial must be estimated as best they can, for when the law points out the method by which an injured person may obtain redress, it should not impose conditions that would deny him the right to secure the redress to which it has said he was entitled; and, so all that the plaintiff in cases like this should be required to do is to state in his petition, as did the appellee, that he had been unable to obtain other employment, although he had diligently endeavored to do so, and to show by evidence what he earned and what efforts he made to get employment up to the trial, leaving it to the jury to determine from the evidence what employment the plaintiff may obtain and how much he can earn between the time of the trial and the termination of the contract. Of course, in arriving at what should be allowed for damages after the trial, the jury can only be guided by the evidence of conditions that existed before and at the time of the trial and from these determine the amount to be awarded. It would not be fair to the plaintiff to assume, in the absence of evidence to that effect, that he will not be damaged subsequent to the trial or to assume that he can and will obtain employment through which he can earn more than the contract price, and if there is uncertainty on doubt about this part of the recovery, the person who incurred the responsibility by committing the breach of the contract should bear the burden of any injustice that may result. And so we are of the opinion that the petition was sufficient, and that the instruction con-

formed to the law as it is administered in this class of cases.

Another ground for reversal is that the evidence does not support the verdict, and that the recovery is excessive. We have carefully read the record and our conclusion without going into details is that appellee at all times performed his duties in a good, efficient and workmanlike manner, and that his discharge was not justified by any failure upon his part to discharge in such a manner his part of the contract. Probably the assessment was slightly more than it should have been, but we are not prepared to say that it was so excessive as to justify us in interfering with the finding of the jury. We have noticed all the material grounds for reversal pointed out by counsel and upon the whole case find no reversible error.

Wherefore the judgment is affirmed.