## Vaughan v. Hindman, Supt. County Schools.

(Decided November 24, 1911.)

### Appeal from Adair Circuit Court.

1. **Contract With Teacher of Public School.**—Where a teacher had a contract with the Division Board of Trustees to teach the public school for a term of six months, and the school was discontinued after six weeks, because the school house had been destroyed by fire, the teacher can not recover the salary for the remainder of the term during which the school was not taught.

2. **School Fund—Pay of Teachers.**—Under section 4407 of the Kentucky Statutes, as amended by section 4505, the public school fund can be paid out to teachers by the county superintendent of schools only when the school has been legally taught, and that fact has been certified by the Chairman of the Board of Trustees.

3. **Public Schools—School Houses.**—Under sub-sections 9 and 11 of section 4426a of the Kentucky Statutes, the building, improvement, equipment and renting of school houses must be done by the County Board of Education; the County School Superintendent has no authority over those matters.

JAMES GARNETT and ROLLIN HURT for appellant.

GORDON MONTGOMERY for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Affirming.

Under a written contract with the Division Board of Trustees for Division No. 3, the appellant undertook to teach the school for Common School District No. 41, of Adair County, for a term of six months, beginning July 6th, 1909, for the sum of $222.60. She began teaching the school on that day and continued to do so until August 19th, 1909, when the school-house was destroyed by fire. She promptly notified the Board of Trustees of the destruction of the house; that she was ready and willing to continue teaching said school during the term as provided by the contract and requested the Board to either rent or build a new school house in place of the old one. The Board of Trustees failed to take any action and the school was not taught after August 19th. Appellant continued, however, to make out her monthly reports, which were certified by the Trustees for the sub-district; approved by the Chairman of the Division Board, and regularly filed with the County Superintendent. At the close of the term, appellant made out the required annual report, which was signed by the Trustee

for sub-district No. 41, and filed with the County Super-
intendent of Schools. Appellant was paid $61.15, which
was the amount due her for services to August 19th,
leaving a balance of $161.55 due her, as she claims, under
the contract.

On May 2, 1910, appellant brought this action against
the appellee, who is Superintendent of the Common
Schools for Adair County, asking a judgment against
the appellee for $161.55, and for a mandatory injunction
against her, directing and requiring her to pay the ap-
pellant said sum of $161.55. On May 24, 1910, appel-
lant filed an amended petition, in which she sought to
make the members of the County Board of Education of
Adair County parties to this action, but these new part-
ies were never brought before the court on said amend-
ment; and, on September 24, 1910, the amended petition
was dismissed upon the motion of appellant. The case,
therefore, stands as originally brought against the ap-
pellee, Pearl Hindman, as Superintendent of the County
Schools.

The circuit judge sustained a demurrer to the peti-
tion and the appellant having declined to further plead,
the petition was dismissed. From that judgment the
plaintiff prosecutes this appeal.

In order to fully understand this controversy, it will
be necessary to quote from several paragraphs of Chap-
ter 113 of the Kentucky Statutes, relating to Common
Schools. Section 4426a, sub-section 9, of that Chapter,
after providing for the levy and collection of a school
tax, contains this provision as to its expenditure:

"When the tax so levied shall have been collected by
the sheriff of the county, he shall turn over to the county
superintendent, who shall act as treasurer of the county
board of education, the amount of money so levied and
collected and the county board shall expend the money
so received in the building, improvement and equipment
of school houses, for the purchase and condemnation of
necessary real estate, for the payment of teachers, pur-
chasing necessary supplies and the extension of the
school term in the various sub-districts throughout the
county, as in their judgment as a county board the needs
of the individual schools for white and colored pupils de-
mand. The county superintendent shall give special
bond as may be approved by the county court. No fund
shall be paid out except on the order of the county board,
signed by the chairman and countersigned by the secre-
tary."

Sub-section 11, of the same section, provides, in part, as follows:

"The county board of education shall have the power to purchase, lease, or rent school sites, to build, to repair and to rent school houses, purchase maps, globes, charts, school furniture, or other apparatus necessary to the efficient conduct of the schools of the county and said county board is hereby vested with the title, care and custody, of all school-houses, sites, or other property belonging to the districts of their several counties and when in the opinion of the board, any site for school-house has become unnecessary, they may sell and convey the same in the name of the county board of education."

Section 4407 relates to the payment of teachers and provides, in part, as follows:

"Each county superintendent of common schools shall, on the second Saturday in October, reckoning school months at twenty days, pay the amount due each teacher of a common school for the month or months completed, but not for any fraction of a month, except as provided in section 4505, on the certificate of the board of trustees for the district that the school has been legally taught for that period; and thereafter the county superintendent shall, on the second Saturday in each calender month, pay the salary due each teacher of a common school for the previous school month or months not previously paid for on the certificate of the chairman of the board of trustees for the district that the school has been legally taught for the period specified."

Section 4505 is an amendment to the former sections. It relates to the duties of teachers, in part, and is as follows:

"The Superintendent of Public Instruction shall provide for each teacher a blank monthly report for each month to be taught, and also a blank term report. At the end of each month taught the teacher shall fill the monthly report of that month from the facts summed up in the monthly summary of the register and shall present the monthly report to the chairman of the board of trustees, who shall carefully examine it, and if found correct he shall, if requested by the teacher, fill out and sign a certificate attached to the monthly report, certifying that the month has been legally taught; and upon the chairman's certificate the teacher shall draw his salary from the county superintendent for the month so certified, after the monthly report has been duly delivered to the county superintendent. Within ten days after the close

of the last month of the term the teacher shall make out the term report from the term summary in the register; shall present the term report, the last monthly report and the teacher's register to the chairman, who shall carefully inspect them and approve the reports, if correct, make out the chairman's annual report and shall then give the teachers certificates for the month or months not previously certified and shall place the chairman's annual report in the teacher's hands for delivery to the county superintendent. Nothing herein shall be construed to prevent a chairman of the board of trustees from certifying to, or a county superintendent from paying for, a fraction of a month in any case in which the teacher, from sickness or other disability, shall be unable to continue the school. Any teacher who shall make a false monthly or term report, or any chairman of trustees who shall give a certificate of a month or months taught before he has carefully examined and approved the report of each month, or any county superintendent who shall make a payment upon a teacher's salary, except upon the chairman's certificate, shall be guilty of a misdemeanor and, on conviction, be fined fifty dollars for each offense.''

Appellant insists that since it is made the duty of the County Board of Education to expend the money in its hands and realized from the school tax levied by the fiscal court, in the building, improvement and equipment of school houses, as well as for the payment of teachers, it was incumbent upon said Board to build a school house in place of the one destroyed by fire; or, if it did not care to then build a new school-house, or was not prepared to do so, it was its duty, under sub-section 11, above quoted, to rent a school-house for the remainder of the term; and, having failed to provide appellant with a school-house, she is, nevertheless, entitled to the compensation called for by the contract. She alleges, and the demurrer admits, that she was at all times ready and willing to perform her part of the contract; and that she has had no other employment during the contract period and was unable to procure any.

On the other hand, appellee contends that the demurrer to the petition was properly sustained; first, because the common school law nowhere empowers or requires the school superintendent to provide a place or house in which to teach the public school, but that this duty is, by section 4426a, expressly placed upon the County Board of Education; and, secondly, because the

Superintendent of County Schools, under section 4505 of the Kentucky Statutes, above quoted, is authorized to pay out the school funds only upon the certificate signed by the Chairman of the Board of Trustees, certifying that the school has been legally taught; and, there being no such certificate in this case, the appellant could not recover.

The circuit judge dismissed the petition upon the theory that a teacher is not entitled to the public school money set aside to a particular school, unless that school has been taught.

In our opinion the circuit judge properly interpreted the several statutes governing this case. Sub-sections 9 and 11, of section 4426a, above quoted, expressly provide that the building, improvement, equipment and renting of school houses shall be done by the County Board of Education, and it alone had the power, as it was its duty in this case, to expend the public money in providing a school house; but the County Board of Education is not a defendant to this action. This suit is against the Superintendent of County Schools, only.

Furthermore, sections 4407 and 4505, when read together, clearly mean that the public school fund can be paid out to teachers by the County Superintendent of Schools only when the school has been legally taught. and that fact has been certified by the Chairman of the Board of Trustees. Neither of these prerequisites exist in this case. The statute does not leave with the County Superintendent of Schools the question of the amount of salary that may be due a teacher. That important duty is wisely confided to the Chairman of the Board of Trustees and the County Superintendent merely performs the clerical duty of paying out the money upon the certificate of the Board having the immediate charge of the teaching force. If appellant has a cause of action, it is against the Division Board of Trustees for a breach of the contract; but that question is not before us.

The judgment of the circuit court will have to be affirmed.